UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN C. KEHOE, <br><br> Petitioner, <br><br> v. <br><br> KEVIN KAUFFMAN, SCI-Huntingdon Superintendent, et al., <br><br> Respondents. | CIVIL ACTION NO. 3:20-CV-01717 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM**

This is a *pro se* habeas corpus action arising initiated upon the filing of the petition in this matter by Petitioner John C. Kehoe ("Kehoe") on September 22, 2020. (Doc. 1). In his petition, Kehoe requests that the Court conduct a hearing so that he "can advocate that 40 plus years already service is enough to warrant [Kehoe] being released due to the COVID 19 virus danger." (Doc. 1, at 2). Kehoe states that he "is not challenging his sentence in this legal filing, but is seeking immediate release from prison, because of COVID 19 dangers to [Kehoe]." (Doc. 1, at 3). Kehoe is currently incarcerated at State Correctional Institute in Huntingdon, Pennsylvania ("SCI-Huntingdon"). (Doc. 1, at 3). Respondents Kevin Kauffman ("Kauffman"), the Superintendent of SCI-Huntington, and Governor Tom Wolf ("Wolf"), responded to the petition on December 7, 2020, and Kehoe filed a traverse on December 21, 2020. (Doc. 8; Doc. 10). The parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b). (Doc. 11). The petition is ripe for review and disposition. For the following reasons, Kehoe's petition will be denied and **DISMISSED WITHOUT PREJUDICE**. (Doc. 1).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On October 17, 1978, the Pennsylvania Delaware County Court sentenced Kehoe to 8 to 10 years for rape and a concurrent 5 to 12 years for burglary. (Doc. 8-6, at 2). On December 11, 1978, the Pennsylvania Montgomery County Court sentenced Kehoe to a consecutive 10 to 20 years for rape, a consecutive 10 to 20 years for robbery, a consecutive 5 to 10 years for burglary, a concurrent 1 to 2 years for reckless endangerment, and a concurrent 2 years, and 6 months to 5 years for terroristic threats. (Doc. 8-6, at 2). Kehoe's minimum sentencing date is December 6, 2010, and his maximum sentencing date is December 6, 2047. (Doc. 8-6, at 2).

Kehoe initiated the present action by filing his petition on September 22, 2020, alleging a "COVID Emergency." (Doc. 1). On December 7, 2020, Respondents filed their response. (Doc. 8). On December 21, 2020, Kehoe filed his traverse. (Doc. 10). Kehoe seeks a hearing to present the issue of his immediate release due to the dangers of the COVID-19 virus. (Doc. 1, at 3).

The Pennsylvania Department of Corrections ("DOC") began its mitigation strategy for the COVID-19 pandemic in February 2020. (Doc. 8-2, at 2). The DOC suspended all visitation on March 13, 2020. (Doc. 8-2, at 2). The DOC has provided free antibacterial soap and cleaning supplies to all inmates and personal protective equipment has been provided to all staff. (Doc. 8-2, at 3). Facilities must be cleaned three (3) times per shift "with a focus on high-touch areas." (Doc. 8-5, at 22). All facilities have screening staff that has been outfitted with masks, face shields, goggles, and gloves. (Doc. 8-5, at 15). All employees are screened daily. (Doc. 8-5, at 15). "Masks are mandatory for all staff and must be worn at all times [except when eating] throughout the institution." (Doc. 8-5, at 19). Inmates must wear masks

"anytime they are outside of the cell/living space." (Doc. 8-5, at 19).

The DOC treats all staff and inmates as if they are asymptomatic carriers of COVID-19 and, therefore, potential transmitters of disease. (Doc. 8-2, at 4). Any inmates who have had direct contact with a symptomatic inmate or staff member, or with any individual who has tested positive, are placed in enhanced quarantine for fourteen (14) days. (Doc. 8-2, at 3). Inmates who come in "from the street" are quarantined for twenty-one (21) days. (Doc. 8-5, at 9). All inmates transfers, such as those from county jails, are quarantined for fourteen (14) days. (Doc. 8-5, at 9). Symptomatic inmates remain in isolation until at least three (3) days have passed since recovery, which is defined as the resolution of fever without the use of fever-reducing medications, improvement in symptoms, and passage of at least fourteen (14) days from when symptoms first appeared. (Doc. 8-5, at 9). Asymptomatic inmates who have tested positive are isolated for fourteen (14) days "beyond the date the sample (swab) was obtained." (Doc. 8-5, at 9).

The DOC has implemented thorough contact tracing "to identify inmates and staff who may have had contact with an individual with influenza like illness or who has tested positive for COVID-19." (Doc. 8-2, at 3). Moreover, the DOC "tests inmates for COVID-19 that are scheduled for transfer to another correctional facility." (Doc. 8-2, at 3). Such testing occurs three (3) to six (6) days prior to the scheduled transfer. (Doc. 8-2, at 3). "If an inmate tests positive, the transfer is postponed, and the inmate is medically isolated for a minimum of 14 days and/or until medically cleared for transfer." (Doc. 8-2, at 3). Moreover, "[a]ll counties are required to test inmates 3-6 days prior to transfer." (Doc. 8-5, at 11). "Inmates must produce a negative result and be asymptomatic prior to transferring to the DOC." (Doc. 8-5, at 11). The DOC also tests inmates prior to transfer to detainers or other locations within

the DOC. (Doc. 8-5, at 11).

      The DOC has worked with the Parole Board "to identify individuals who are otherwise eligible for release and transition them safely to the community where they can shelter in place with families." (Doc. 8-2, at 6). Moreover, on April 10, 2020, the Governor signed an executive order pursuant to Article IV, § 9(a) of the Pennsylvania Constitution and the Emergency Management Service Code, 35 Pa. C. S. § 7301, to authorize the DOC to establish a temporary reprieve program to transfer eligible inmates to community corrections centers or home confinement. (Doc. 8-2, at 7). To be eligible, inmates must be considered high risk should they contract COVID-19. (Doc. 8-2, at 7). Moreover, inmates must be eligible for release within the next twelve (12) months or otherwise within nine (9) months of their minimum eligible release date. (Doc. 8-2, at 7). Inmates serving sentences for violent offenses are excluded from the program. (Doc. 8-2, at 7). The DOC's "population reduction efforts have resulted in a total reduction of nearly 2,500 inmates since March 1, 2020." (Doc. 8-2, at 9).

      Early on, the DOC initiated a statewide quarantine, implementing measures to prevent the spread of COVID-19 with inmates and staff remaining on the same housing units. (Doc. 8-2, at 4). An individual who was positive for COVID-19 came into SCI-Huntingdon on April 9, 2020, leading to the DOC's "most significant outbreak." (Doc. 8-2, at 4). The first inmate at SCI-Huntingdon tested positive on April 20, 2020. (Doc. 8-2, at 5). SCI-Huntingdon immediately began contact tracing. (Doc. 8-2, at 5). Secretary Wetzel has noted that one issue at SCI-Huntingdon which led to the outbreak is that it "is an old facility of an old design." (Doc. 8-2, at 5). The "facility consists of multiple four-tier housing units that have open-bar cell doors; and all inmate and employee movement travels through a central hub area near

4

the prison's control center." (Doc. 8-2, at 5). Various areas were converted into isolation areas because SCI-Huntingdon does not have an infirmary. (Doc. 8-2, at 5). Moreover, approximately ninety (90) inmates were transferred to SCI-Phoenix to allow better separation of inmates into smaller groups. (Doc. 8-2, at 6). As of May 11, 2020, SCI-Huntingdon had "35 staff cases and 131 positive inmates cases, with 15 inmate having already recovered." (Doc. 8-2, at 6).

II. **DISCUSSION**

In his petition, Kehoe alleges that he has "serious medical problems that absolutely does compromise his immunity defense" and is particularly vulnerable to COVID-19 due to his diabetes, respiratory problems, and heart problems. (Doc. 1, at 1-2). Kehoe asserts that he "was not sentenced to die in prison," and that he has served the minimum sentence requirements. (Doc. 1, at 1-2). Kehoe submits that Respondents were aware of the dangers that COVID-19 presents to Kehoe, ignored his situation, and abandoned him to those dangers. (Doc. 1, at 2-3). Kehoe claims that he "is an ideal candidate for immediate release because of COVID 19 virus dangers to [Kehoe]'s life." (Doc. 1, at 3). Thus, Kehoe states that "[t]he rules of civility require that [Kehoe] be granted the opportunity to be spared from the COVID 19 virus." (Doc. 1, at 3). Respondents argue that the Court should dismiss the petition because Kehoe failed to avail himself of the state law remedy provided by a state law habeas proceeding under 42 Pa. C.S. § 6502(a). (Doc. 8, at 11). In addition, Respondents argue that the Court should deny the petition because Kehoe cannot establish that his Eighth Amendment rights were violated through deliberate indifference. (Doc. 8, at 11).

    A. THE COURT CONSTRUES KEHOE'S HABEAS PETITION AS FILED PURSUANT TO 28 U.S.C. § 2254.

In the petition, Kehoe cites to both 28 U.S.C. § 2254 and 28 U.S.C. § 2241. (Doc. 1).

5

However, the Third Circuit has held that "a state prisoner challenging the validity or execution of his state court sentence must rely on the more specific provisions of § 2254 rather than § 2241." *Washington v. Sobina*, 509 F.3d 613, 618 n.5 (3d Cir. 2007) (citing *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)).

Constitutional challenges to the fact or duration of confinement are proper subjects of a habeas corpus petition. *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973). Section 2241 of Title 28 of the United States Code confers jurisdiction on district courts to issue a writ of habeas corpus in response to a petition from a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2254 confers jurisdiction on district courts to issue "writs of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In *Miller v. Wetzel*, a Pennsylvania state inmate filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release due to the risks COVID-19 poses to his health. No. 1:20-CV-02129, 2021 WL 1253524, at *1 (M.D. Pa. Apr. 5, 2021). The Court construed the prisoner's petition to be filed pursuant to 28 U.S.C. § 2254 and not 28 U.S.C. § 2241 because he sought to challenge the execution of his state sentence based on conditions of confinement posed by the COVID-19 virus in a state prison. *Miller*, 2021 WL 1253524, at *2. Finding that the prisoner failed to exhaust his state court remedies as required under 28 U.S.C. § 2254(b)(1), the Court denied the prisoner's petition without prejudice. *Miller*, 2021 WL 1253524, at *3.

Here, like the petitioner in *Miller*, Kehoe is not a federal inmate who can challenge the execution of his sentence via a habeas petition pursuant to Section 2241. *See Ginn v. Kauffman,*

6

No. 1:21-CV-0508, 2021 WL 1340140, at *2 (M.D. Pa. Apr. 9, 2021) (finding that habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner in state custody due to his conviction in the Court of Common Pleas of Philadelphia County and his petition for habeas relief seeks his immediate release from custody). Likewise, Kehoe is not a federal immigration detainee. (Doc. 1, at 3). Lastly, there is no Third Circuit precedent that would permit Kehoe to bring a § 2241 petition alleging that the virus and resulting conditions of his confinement render his current incarceration in state custody violative of the Eighth Amendment. See *Miller*, 2021 WL 1253524, at *2 n.3.

Kehoe avers that he "is not challenging his sentence is this legal filing, but is seeking immediate release from prison, because of COVID 19 dangers." (Doc. 1, at 3). However, the petition requests that the Court "order a COVID 19 hearing, and hear from [Kehoe] and the Respondents, as to the issue of immediate release for [Kehoe]." (Doc. 1, at 3). Thus, Kehoe seeks a modification of his state sentence based on alleged unconstitutional conditions of confinement posed by COVID–19 in SCI-Huntingdon, a state prison. Accordingly, Kehoe must proceed under Section 2254 in challenging the execution of his sentence. *Miller*, 2021 WL 1253524, at *2. As such, the Court construes Kehoe's habeas petition as filed pursuant to 28 U.S.C. § 2254 and not § 2241.

B. KEHOE'S COMPASSIONATE RELEASE CLAIM IS PROCEDURALLY DEFAULTED.

28 U.S.C. § 2254 permits federal courts to issue habeas corpus relief for persons in state custody. Habeas corpus relief cannot be granted unless: 1) all available state court remedies on the federal constitutional claims have been exhausted; 2) there is an absence of available state corrective process; or 3) circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, a

petitioner must "fairly present" it to each level of the state courts. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). It is the petitioner's burden to demonstrate that he has raised his claims in the proper state forum through the proper state vehicles, not just that he raised a federal constitutional claim before a state court at some point. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

While a prisoner may properly challenge the "fact or duration" of his confinement through a § 2254 petition, the statute sets "several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Preiser*, 411 U.S. at 498-99. Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."). Rather, federal habeas review is limited to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68. As such, a writ of habeas corpus is an " 'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).

Without deciding whether Kehoe can seek release due to COVID-19 in a habeas petition, he is first required to exhaust his available state court remedies. *See* 28 U.S.C. § 2254(b)(1); *see also Massey v. Estock*, No. 1:20-CV-271, 2020 WL 8224836, at *2 (W.D. Pa. Nov. 2, 2020); *Clauso v. Warden*, No. 20-5521, 2020 WL 2764774, at *3 (D.N.J. May 27, 2020)

(dismissing state prisoner's habeas petition due to his failure to exhaust available state court remedies to address COVID-19 condition of confinement concerns); *Malloy v. Dist. Att'y of Montgomery Cty.*, 461 F.Supp.3d 168, 172 (E.D. Pa. 2020) (dismissing state inmate's COVID-19 habeas petition due to failure to exhaust state court remedies through state trial court or appellate courts).

Review of the dockets for Kehoe's criminal proceedings indicates that he has not petitioned the sentencing courts for any type of compassionate release. *See Commonwealth v. Kehoe*, Docket No. CP-23-MD-0006998-1977 (Delaware Cty. C.C.P.); *Commonwealth v. Kehoe*, Docket No. CP-23-CR-0002517-1976 (Montgomery Cty. C.C.P.). Kehoe asserts that he did not request release from state courts because he "is in a medical COVID 19 lockdown, [l]ocked in his cell and unable to make any visits to the law library, copy machine etc." (Doc. 10, at 2). However, Kehoe has not alleged that he exhausted the available state remedies, nor has he alleged the lack of a state court remedy.

In Pennsylvania, compassionate release, or deferment of sentence, allows for the temporary placement of a state inmate to a hospital, long-term care nursing facility, or hospice care location under electronic monitoring provided that certain requirements are met. *See* 42 Pa. C.S. § 9777. An inmate or person to whom the court grants standing to act on behalf of the inmate may petition the sentencing court for such relief. *See* 42 Pa. C.S. § 9777(a)(2). Additionally, in order to obtain relief, a petitioner must make a prima facie claim that his current facility lacks the resources to treat him or that his illness compromises the collective health of the institution holding him. *See Commonwealth v. Lightcap*, 806 A.2d 449 (Pa. Super. 2002).

Alternatively, Kehoe may file a state petition for writ of habeas corpus pursuant to 42 Pa.C.S. § 6502(2). In Pennsylvania, aside from challenging the legality of one's confinement, "habeas corpus is available to secure relief from conditions constituting cruel and unusual punishment, even though the detention itself is legal." *Com. Ex rel. Bryant v. Hendrick*, 280 A.2d 110, 113 (Pa. 1971). As Kehoe is not attacking his conviction or sentence in this habeas matter, but asserts that his conditions of confinement amount to cruel and unusual punishment due to his health in face of the pandemic, he could file a state habeas petition to pursue the claims that he raises in this matter.

Finally, a third alternative form of relief is available to Kehoe via Governor Wolf's temporary program to reprieve sentences of incarceration for those inmates who meet established criteria. *See* https://www.governor.pa.gov/wp-content/uploads/2020/04/20200410-GOV-DOC-reprieve-release-order-COVID-19.pdf (last visited February 2, 2022). This program "temporarily suspends the sentences of incarceration of those persons who qualify and comply with supervision requirements for such length of time as may be necessary" during the Commonwealth's disaster emergency as a result of COVID–19. The Pennsylvania Department of Corrections' Daily Population Reports reflects how many inmates are granted reprieve releases under the Governor's program. *See* https://www.cor.pa.gov/Pages/COVID-19.aspx (Daily Population Reports, last visited February 2, 2022). Whether Kehoe would qualify for such a reprieve is unknown until it is requested.

The Court is sympathetic to Kehoe's concerns about contracting the COVID-19 virus. Kehoe, however, has not exhausted his available state remedies for seeking home confinement, and nothing in the record before the Court suggests that his failure to do so

10

should be excused. As there are available state court remedies for Kehoe to pursue his compassionate release claim, the Court is barred from addressing Kehoe's petition. 28 U.S.C. § 2254(c); *see Miller*, 2021 WL 1253524, at *3.

III.   CONCLUSION

For the foregoing reasons, Kehoe's petition for writ of habeas corpus is **DENIED WITHOUT PREJUDICE** due to his failure to exhaust his available state court remedies. (Doc. 1). The Clerk of Court is directed to **CLOSE** this case.

An appropriate order follows.

**BY THE COURT:**

**Dated: March 21, 2022**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**